UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
GREENSCAPE LANDSCAPE CONTRACTOR,
INC., d/b/a GREENSCAPE DISASTER SERVICES

                Plaintiffs,

-against-

"LOOKS GREAT" SERVICES, INC., THOMAS RANKIN
individually and in his capacity as an Officer and/or director
of "LOOKS GREAT" SERVICES, INC., BERGERON
EMERGENCY SERVICES, INC., BRIAN THOMASON
Individually and in his capacity as an Officer and/or
Director of BERGERON EMERGENCY SERVICES, INC.,
ATLANTIC DEBRIS SERVICES, LLC, CHARLES
BOX individually and in his capacity as an Officer
and/or Director of ATLANTIC DEBRIS
SERVICES, LLC and IWING, LLC,

                Defendants.
-----------------------------------------------------------------------X

Case No.

**AMENDED VERIFIED COMPLAINT**

The plaintiff, GREENSCAPE LANDSCAPE CONTRACTOR, INC., d/b/a GREENSCAPE DISASTER SERVICES, (hereinafter "GREENSCAPE"), by its attorneys, KUSHNICK PALLACI PLLC, as and for its Complaint against the above-named defendants, respectfully alleges upon information and belief as follows:

## IDENTITY OF THE PARTIES, JURISDICTION AND VENUE

1.    At all relevant times herein mentioned, plaintiff GREENSCAPE was and still is a foreign business corporation, organized and existing pursuant to the laws of the State of New Jersey, authorized to do business in the State of New York, and maintains a principal place of business at 201 St. Anthony's Drive, Moorestown, New Jersey 08057.

2.    At all relevant time herein mentioned, defendant, "LOOKS GREAT" SERVICES, INC. (hereinafter "LOOKS GREAT"), is a foreign business corporation organized and existing pursuant to the laws of the State of Delaware and authorized to conduct business within the State

1

of New York. LOOKS GREAT maintains a principal place of business at 7 Lawrence Hill Road, Huntington, New York 11743.

3. Upon information and belief, LOOKS GREAT, is a foreign business corporation organized and existing pursuant to the laws of the State of Delaware and is not authorized to do business within the State of New York.

4. In or about September 2013, it was brought to GREENSCAPE's attention that LOOKS GREAT never was in fact an authorized domestic business corporation in the State of New York.

5. Upon information and belief, all relevant times hereinafter mentioned, THOMAS RANKIN (hereinafter "RANKIN"), was and is the principal and owner of LOOKS GREAT and is a citizen of the State of New York.

6. Upon information and belief, at all relevant times hereinafter mentioned, BERGERON EMERGENCY SERVICES, INC. (hereinafter "BERGERON") was and is a foreign business corporation organized and existing pursuant to the laws of the State of Florida, authorized to do business in the State of New York, with its principal place of business located at 19612 SW 69th Place, Fort Lauderdale, Florida 33332.

7. Upon information and belief, at all relevant times hereinafter mentioned, BRIAN THOMASON (hereinafter "THOMASON") was and is a principal, officer and/or director of BERGERON and is a citizen of the State of Florida.

8. Upon information and belief, at all relevant times hereinafter mentioned, ATLANTIC DEBRIS SERVICES, LLC (hereinafter "A.D.S", sometimes hereafter A.D.S., BERGERON, IWING and LOOKS GREAT are collectively referred to as the "corporate defendants"), was and is a limited liability company organized and existing pursuant to the laws

2

of the State of North Carolina, with its principal place of business located at 1332 Laneridge Court, Raleigh, North Carolina 27603.

9. Upon information and belief, at all relevant times hereinafter mentioned, CHARLES BOX (hereafter "BOX") was and is a principal and owner of A.D.S. and is a citizen of the State of North Carolina.

10. Upon information and belief, at all relevant times hereinafter mentioned, IWING, LLC (hereinafter "IWING"), was and is a limited liability company organized and existing pursuant to the laws of the State of Georgia, with its principal place of business located at 1441 N. Druid Hills Road N.E., Atlanta, Georgia 30319.

11. The events or omissions that give rise to the claims in this action took place within the State of New York, within the Eastern District of New York and venue in this action therefore properly lies in the Eastern District of New York, pursuant to 28 U.S.C §1391(b)(2).

12. Jurisdiction of the Court over this controversy is based upon 28 U.S.C. §1332 because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs and is between citizens of different states.

## FACTUAL BACKGROUND

13. Upon information and belief, in or about February 2013, IWING contracted with GREENSCAPE to provide trucks and equipment for Army Corps of Engineers contract number W912DS-13-C-0018 (hereinafter the "Project"). Upon information and belief, the Project related to cleanup and remediation service to be performed within the Eastern District of New York in the aftermath of Super Storm Sandy.

14. Upon information and belief, IWING was hired by ADS as a subcontractor on the Project.

15. Upon information and belief, ADS was hired by LOOKS GREAT as a subcontractor on the Project.

16. Upon information and belief, LOOKS GREAT was awarded contract W912DS-13-C-0018 from the Army Corps of Engineers.

17. Upon information and belief, at some time after LOOKS GREAT was awarded the Project it partnered with BERGERON and/or entered into a joint venture agreement to carry out the required work for the Project.

18. Upon information and belief, thereafter, BERGERON acted as the general contractor/project manager of the Project simultaneously with LOOKS GREAT and, in fact, upon information and belief, directly oversaw, controlled and/or performed the majority of the LOOKS GREAT work.

19. Upon information and belief, BERGERON was brought on to the project by LOOKS GREAT in order to further isolate LOOKS GREAT from its payment obligations and to create another tier between itself and any subcontractor.

20. Upon information and belief, after the Project was underway, LOOKS GREAT took over direct performance of IWING's contract and refused to pay IWING for the work it performed.

21. Upon information and belief, LOOKS GREAT directed BOX, of ADS, to facilitate the completion of the IWING work and to remove IWING from the Project.

22. Once IWING was removed from the Project by LOOKS GREAT, LOOKS GREAT and ADS orally contracted with GREENSCAPE for payment and specifically agreed to make

direct payment to GREENSCAPE in exchange for the labor and/or equipment provided to the Project by GREENSCAPE.

23. LOOKS GREAT required IWING employees to wear shirts and hats with the LOOKS GREAT name, thereby creating the impression that IWING employees were actually LOOKS GREAT employees.

24. Upon information and belief, this was done by LOOKS GREAT in an attempt to mislead the Army Corps of Engineers into believing that LOOKS GREAT did in fact provide 51% of its own employees to complete the work under the Project.

25. Upon information and belief, LOOKS GREAT failed to comply with the requirements of the Army Corps of Engineers contract.

26. In order to keep GREENSCAPE's equipment on site, LOOKS GREAT, through RANKIN, and ADS, through Charles Box, orally agreed to make direct payment and/or to guarantee payment to GREENSCAPE and thereby necessarily assumed the contractual obligations of IWING to GREENSCAPE.

27. After IWING was removed from the Project, GREENSCAPE was concerned it would not be paid for the work it performed.

28. In order to keep GREENSCAPE and its vital equipment on the Project, LOOKS GREAT, by and through RANKIN, and BERGERON, by and through THOMASON, directed and required A.D.S. to make a good faith payment of $5,000.00 directly to GREENSCAPE.

29. RANKIN, THOMASON, and BOX all personally guaranteed that Payments due and owing to GREENSCAPE would be assumed and honored by LOOKS GREAT, BERGERON and ADS and that direct payment would be made to GREENSCAPE.

30. GREENSCAPE fully performed its obligations under both the written contract with IWING and the verbal agreements with LOOKS GREAT and ADS.

31. GREENSCAPE never received any complaints regarding the work it performed or equipment it provided.

32. GREENSCAPE is still owed $216,219.00 for equipment, vehicles, fuel and machinery it provided to LOOKS GREAT, RANKIN, BERGERON, THOMASON, A.D.S., BOX and IWING.

33. Upon information and belief, LOOKS GREAT's failure to comply with its contractual obligations under its contract with the Army Corps of Engineers, and its failure to pay subcontractors and vendors, has resulted in LOOKS GREAT being investigated by the Nassau County District Attorney.

34. Upon information and belief, LOOKS GREAT's failure to properly compensate its subcontractors has resulted in an investigation by the New York State Department of Labor.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract – All Corporate Defendants)

35. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "34", as if each were more fully alleged herein.

36. GREENSCAPE has fully performed all of its obligations under the contract with IWING.

37. GREENSCAPE has fully performed all its obligations under the contract with LOOKS GREAT.

6

38. GREENSCAPE has fully performed all of its obligations under the contract with BERGERON.

39. GREENSCAPE has fully performed all of its obligations under the contract with A.D.S.

40. Despite numerous demands for payment, defendants have failed and refused to deliver final payment to GREENSCAPE in the amount of $216,219.00.

41. By reason of the foregoing, GREENSCAPE has been damaged in the amount of $216,219.00 plus interest and the costs and disbursements incurred in bringing this action and otherwise enforcing its rights under the Agreements.

## AS AND FOR A SECOND CAUSE OF ACTION
(Violation of Article 3A of the Lien Law – All Defendants)

42. Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "41" of this Complaint as if each were more fully set forth herein at length and in addition thereto, alleges as follows:

43. The New York State Lien Law, Article 3A, provides that all monies received by a contractor on a construction project are to be held in trust for the benefit of those persons supplying labor and materials toward the improvement of the project premises.

44. The obligation extends to principals of the contractor, in this case to RANKIN, THOMASON and BOX, to not only hold the funds received as trust assets, but also to maintain separate records and books of account with respect to all such files.

45. Plaintiff is a beneficiary of the trust created under Article 3A of the Lien Law with respect to work performed at the Project.

46. Upon information and belief, LOOKS GREAT, BERGERON, IWING, ADS and RANKIN, THOMSPON and BOX received monies from Nassau and/or Suffolk County and/or the United States and that said monies were diverted to their own use and used to pay themselves, company overhead and/or others who are not designated Lien Law trust fund beneficiaries prior to payment of all proper Lien Law trust fund beneficiaries, including GREENSCAPE.

47. Plaintiff has demanded payment and proof of fund uses without response from IWING, LOOKS GREAT, ADS, BERGERON, RANKIN, THOMASON or BOX and does hereby seek an order of judgment compelling a full and complete fiduciary trust accounting of all monies paid to IWING, LOOKS GREAT, BERGERON, ADS and RANKIN by the Counties and/or the United States and disbursed by IWING, LOOKS GREAT, RANKIN, THOMASON, BERGERON and ADS on the Project, and further that, to the extent trust assets have been used by defendants to pay salaries of employees, expenses of defendants or have been used for any other purpose other than as permitted expenditures under Article 3A of the Lien Law, the Court order the repayment of such trust funds by those defendants who have been found to have diverted such assets, and additionally, order the trace, return and repayment from the recipients of such funds.

48. LOOKS GREAT acted as prime contractor on its contract with the Army Corps. of Engineers.

49. LOOKS GREAT received compensation to perform its obligations under the Army Corps. of Engineers contract.

50. As a matter of law, pursuant to Article 3A of the New York State Lien Law, the money received by LOOKS GREAT in connection with the Army Corps. of Engineers contract were funds for the benefit of the entities performing construction work or providing materials and equipment to the Project.

51. LOOKS GREAT was not entitled to compensation for its performance under the Army Corps. of Engineers contract unless and until all subcontractors, suppliers, materialman and providers subcontracts were paid.

52. Through various written and oral agreements, GREENSCAPE was contracted by IWING, LOOKS GREAT and ADS to provide construction related services for the Project.

53. GREENSCAPE has not been fully compensated for the work it performed pursuant to contract.

54. By failing to assure that trust funds were properly paid to GREENSCAPE, LOOKS GREAT, RANKIN, BERGERON, THOMASON, ADS and IWING violated Article 3A of the New York State Lien Law.

55. On or about August 26, 2013, GREENSCAPE caused to be served upon LOOKS GREAT a demand pursuant to New York State Lien Law § 76.

57. Upon information and belief, LOOKS GREAT received GREENSCAPE's Lien Law §76 demand on August 28, 2013.

58. LOOKS GREAT has failed to provide GREENSCAPE with a response pursuant to Lien Law § 76.

59. By failing to provide GREENSCAPE with a response to the § 76 demand, statutory legal presumption has been created that LOOKS GREAT breached its obligations as trustee of the construction trust funds and, in fact, diverted such trust funds for non-trust purposes.

60. GREENSCAPE is an intended beneficiary of the trust funds under the New York State Lien Law.

61. By LOOKS GREAT's breach of its statutory obligations under the New York State Lien Law, its principals are personally liable for allowing trust diversions to occur.

62. RANKIN, as principal of LOOKS GREAT is personally liable to GREENSCAPE for the amount diverted by LOOKS GREAT up to and including the amount that GREENSCAPE is due under its contract, plus interest and attorney's fees.

### AS AND FOR A THIRD CAUSE OF ACTION
(LOOKS GREAT's Breach of Contractual Obligations)

64. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" through "63" above as though each were more fully set forth herein at length and further alleges as follows:

65. LOOKS GREAT failed to comply with the requirements of the Army Corps of Engineers contract.

66. LOOKS GREAT failed to comply with 52.204-10(b) Section 2(d)(2) of the Federal Funding Accountability and Transparency Act of 2006 which requires the Contractor (LOOKS GREAT) to report information on subcontracts.

67. The Federal Funding Accountability and Transparency Act of 2006 required LOOKS GREAT to notify all subcontractors that all contracts awarded are to be made public.

68. In order to keep GREENSCAPE's equipment on site, LOOKS GREAT, through RANKIN, BERGERON, through THOMASON and ADS, through BOX, orally agreed assume the obligations under the IWING contract and to complete same and to make direct payment and/or to guarantee payment to GREENSCAPE and thereby necessarily assumed the contractual obligations of IWING to GREENSCAPE.

69. LOOKS GREAT failed to comply with 52.204-10(d)(2) of the Executive Compensation and First Tier-Subcontract award provisions of its contract with the Army Corp. of

Engineers which required LOOKS GREAT to report any subcontract awarded of $25,000.00 or more on the "FSRS.gov" website.

70. LOOKS GREAT also failed to comply with its duty to ensure accurate reporting of all subcontracts it awarded on the "FSRS.gov" website.

71. LOOKS GREAT, after breaching its contract with IWING, assumed the GREENSCAPE-IWING contract and directed Charles Box of ADS to facilitate the completion of the IWING-GREENSCAPE contract by and through LOOKS GREAT, BERGERON and ADS.

74. The LOOKS GREAT-GREENSCAPE contract was implied by course of conduct and multiple oral agreements and assurances.

75. The LOOKS GREAT-GREENSCAPE contract is evidenced by GREENSCAPE continuing to provide equipment for the subject contract after IWING was removed from the job and payments being made directly to GREENSCAPE at the direction of LOOKS GREAT.

76. By virtue of the LOOKS GREAT-GREENSCAPE contract, GREENSCAPE became a "first-tier" subcontractor.

77. Upon information and belief, GREENSACPE provided approximately 90% of all of the equipment used by LOOKS GREAT and BERGERON to complete the Project.

78. Upon information and belief, but for GREENSCAPE'S agreement to continue to provide equipment to the Project, the Project would not have been completed.

79. But for the oral promises and agreements of LOOKS GREAT, RANKIN, ADS and BERGERON, GREENSCAPE would have removed its equipment from the Project.

77. A "first-tier subcontract" is defined by the Army Corps. of Engineers as a subcontract awarded directly by the Contractor (LOOKS GREAT) for the purpose of acquiring supplies or services (including construction) for performance of a prime contract.

78. A "subcontract" is defined by the Army Corps. of Engineers as "any agreement (other than one involving an employer-employee relationship) entered into by a Federal Government prime Contractor or subcontractor calling for supplies or services required for performance of the contract or subcontract.

79. LOOKS GREAT failed to submit any and all information regarding its award of subcontracts as required by the Army Corps. of Engineers Contract.

80. LOOKS GREAT was required to report all subcontracts it awarded, regardless of the dollar value of the contract.

81. By failing to report the LOOKS GREAT-GREENSCAPE contract, LOOKS GREAT failed to protect GREENSCAPE as a first-tier subcontractor under the Army Corps. of Engineers contract in that without first-tier subcontractor status GREENSCAPE could not claim protection under 40 U.S.C. §§3131 – 3134 (commonly referred to as the Miller Act) and/or any payment bond which was intended to secure payment to subcontractor on the Project.

83. As a result of the foregoing, GREENSCAPE has been damaged in the amount of $216,219.00.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Against LOOKS GREAT - Intended Third-Party Beneficiary)

84. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" through "83" above as though each were more fully set forth herein at length and further alleges as follows:

85. LOOKS GREAT awarded a contract to IWING in connection with the Army Corps. of Engineers contract for the Project.

86. IWING in turn subcontracted with GREENSCAPE to rent trucks, trailers, heavy equipment and machinery from GREENSCAPE.

87. LOOKS GREAT failed to pay IWING full compensation due under the contract.

88. As a result, IWING could not pay GREENSCAPE.

89. LOOKS GREAT was aware that GREENSCAPE was providing 90% of all trucks, machinery, trailers and heavy equipment used to perform the Project related to the Army Corps. of Engineers contract # W912DS-13-C-0018.

90. By virtue of the relationship between LOOKS GREAT, ADS and IWING, and IWING and GREENSCAPE, GREENSCAPE was an intended third-party beneficiary of the LOOKS GREAT-ADS and ADS-IWING contract.

91. GREENSCAPE fully performed its obligations under the contract with IWING.

92. GREENSCAPE fully performed its obligations to LOOKS GREAT.

93. GREENSCAPE satisfied any and all obligations in connection with the Army Corps. of Engineers contract # W912DS-13-C0018.

94. LOOKS GREAT received direct and immediate benefit from GREENSCAPE in the form of trucks, machinery, trailers and heavy equipment.

95. GREENSCAPE has properly demanded payment.

96. GREENSCAPE has not been paid.

97. As a result, GREENSCAPE has been damaged in an amount to be determined by the trier of fact, but not less than $216,219.00.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Quantum Meruit – All Corporate Defendants)

98. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" through "97" above as though each were more fully set forth herein at length and further alleges as follows:

99. Plaintiff performed work on the Project in good faith and based upon the belief that it would be paid for the equipment that it provided.

100. Plaintiff provided equipment to the Project in good faith and based upon the belief that LOOKS GREAT, BERGERON, ADS and/or IWING would pay it for its services.

102. IWING, LOOKS GREAT, BERGERON and ADS allowed plaintiff to provide equipment to the Project without objection and with the express knowledge that plaintiff was performing work based upon the terms of the terms of the written and oral agreements and repeated promises and assurances that direct payment would be made to plaintiff.

109. Plaintiff had a reasonable expectation to be compensated for it's equipment that it provides in connection with the Project.

110. Plaintiff is entitled to the reasonable value of its equipment provided to the Project.

111. By virtue of the defendants' breach of the Agreement, the defendants have unjustly benefitted from the equipment provided by plaintiff the defendants received payment for the work performed by them with plaintiff's equipment which work would not have been possible without plaintiff's equipment.

112. Plaintiff has not been paid the full and reasonable value of the equipment that it provided to the Project.

113. By virtue of the foregoing, plaintiff has been damaged in an amount to be determined by the trier of fact, but not less than $216,219.00 plus interest from along with the costs and disbursements of this action.

## AS AND FOR AN SIXTH CAUSE OF ACTION
(Violation of G.B.L. Article 35E – All Corporate Defendants)

114. Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "113" of this Complaint as if fully set forth at length herein and in addition thereto, alleges as follows:

115. Upon information and belief, the Project is one intended to be covered by New York State General Business Law, Article 35E, which mandates that all construction contractors, such as LOOKS GREAT, ADS, BERGERON and IWING, timely remit payment to subcontractors, suppliers and vendors retained to perform construction services.

116. In breach and in violation of New York State law, LOOKS GREAT, ADS, BERGERON and IWING have failed to timely process invoices and remit payment to plaintiff for the equipment that plaintiff provided to the Project.

117. Pursuant to New York G.B.L. Article 35E, a contractor that objects to paying a subcontractor, vendor or supplier must object to payment within a reasonable amount of time and specify the reasons for the objections and state, with particularity, the amount to be withheld.

118. None of the plaintiff's requests for payment were ever objected to by any of the Corporate Defendants nor was plaintiff ever given a specific reason stating that amounts were being withheld or why.

117. As a result, the Corporate Defendants are liable to plaintiff for the sum of $216,219.00 plus statutory interest at the rate of 12% per annum, attorney's fees and the costs and disbursements of this action.

**WHEREFORE,** plaintiff demands judgment upon the complaint as follows:

1. On the first cause of action, in favor of plaintiff and against all corporate defendants in the amount of $216,219.00 plus statutory interest at the rate of 9% per annum from the date of breach along with the costs and disbursements of this action; and

2. On the second cause of action, in favor of plaintiff and against all defendants for a full trust accounting and full recoupment and repayment of all funds disbursed for non-trust purposes, with Statutory interest, attorney's fees and the costs of this action; and

3. On the third cause of action, in favor of plaintiff and against LOOKS GREAT in the amount of $216,219.00 plus statutory interest at the rate of 9% per annum from the date of breach along with the costs and disbursements of this action; and

4. On the fourth cause of action, in favor of plaintiff and against LOOKS GREAT in the amount of $216,219.00 plus statutory interest at the rate of 9% per annum from the date of breach along with the costs and disbursements of this action; and

5. On the fifth cause of action, in favor of plaintiff and against all corporate defendants in the amount of $216,219.00 plus statutory interest at the rate of 9% per annum from the date of breach along with the costs and disbursements of this action;

6. On the sixth cause of action, in favor of plaintiff and against all Corporate Defendants in the amount of $216,219.00 plus statutory interest at the rate of 12% per annum from the date of breach along with the attorneys' fees, costs and disbursements of this action.

Dated: Melville, New York
December 20, 2013

>Yours, etc.,
>
>KUSHNICK PALLACI, PLLC
>
>By: _____
>Vincent T. Pallaci, Esq. (VP0801)
>*Attorneys for Plaintiff(s)*
>445 Broad Hollow Road, Suite 124
>Melville, New York 11747
>(631) 752-7100

**VERIFICATION**

STATE OF __NJ__ }
                     ss.:
COUNTY OF __Camden__ }

I, __ARMAND DALE CALWAN__, being duly sworn, depose and say that:

I am a principal of the Plaintiff in the within action; that I am authorized to make this verification on behalf of the plaintiff; that I have read the foregoing AMENDED VERIFIED COMPLAINT, and know the contents thereof; the same is true to my own knowledge, except as to those allegations therein stated to be upon information and belief, and as to those matters, I believe them to be true.

*[signature]*

Sworn to before me on
the 2nd day of Jan, 2014.

Notary Public

Jerry Hosein
Notary Public
New Jersey
My Commission Expires 9-24-18
No. 2438773

1/02/2014

*[signature]*

18